*741 OPINION OF THE COURT
Sharon M.J. Gianelli, J.
The defendant is charged with one count of assault in the third degree, in violation of Penal Law § 120.00 (1), and one count of petit larceny, in violation of Penal Law § 155.25, based on allegations that the defendant assaulted the complainant and stole his cell phone. More specifically, the People allege that on June 9, 2008, in front of 28 Felton Avenue, Valley Stream, New York, the defendant and another, having followed the complainant home after an apparent road rage incident, exited a car, approached the complainant, and struck him numerous times about his body. Further, when the victim tried to call 911, the defendant and his unidentified accomplice took the complainant’s cell phone and threw it away. According to the complainant, “I was left with a swollen jaw, bruised chest and ribs, cuts and scrapes to both legs and pain and swelling to both my arms and substantial pain in my whole body due to the beating.”
Defendant has moved the court for an order compelling the District Attorney to produce and provide to defendant complainant’s medical records predating the incident. It should be noted that the People have already obtained and provided to the defense numerous medical records, including all records subsequent to the date of the incident, as well as some records predating the June 9th date of incident. Included in the records already provided to defendant is the entire file from the Pain Management Center of Long Island, covering services provided on November 14, 2008, November 5, 2008, September 11, 2008, September 5, 2008, August 13, 2008, July 15, 2008, June 17, 2008, May 13, 2008, April 16, 2008, March 20, 2008, and February 25, 2008. The People have also provided the records of Dr. Ticker of Island Orthopedics consisting of the doctor’s narrative, dated July 22, 2008 and an MRI report, dated July 28, 2008. They have provided medical records from Dr. Moynihan of East Meadow Family Practice consisting of lab test results, office notes, and Dr. Ticker’s narrative. They have provided reports from Dr. Drucker’s medical group regarding MRI results, and they have provided a copy of the Nassau County Police Department ambulance report.
Defendant now moves this court for an order compelling the People to provide all medical records of the complainant, including referring physicians, in addition to those already provided, which may be “relevant” to the instant assault charge. He *742 argues that since the complainant claims to have suffered pain as a result of the assault, he is entitled to disclosure of the victim’s entire medical history, as it relates to pain. At issue, therefore, is what further medical records, if any, which predate the current incident, should be required to be disclosed to the defense.
The complainant has a prior history of neck pain and was diagnosed with cervical radiculopathy in the area of C5-6 in February 2008, four months prior to the instant assault. He was seen by doctors at the Pain Management Center of Long Island on three additional occasions prior to the instant assault. It is noteworthy that the complainant here does not allege that the instant assault aggravated a prior medical condition. The question, therefore, is whether or not the complainant, by virtue of being the alleged victim of an assault, opens his entire medical history to inspection by the defense. The court concludes that he does not.
In order to provide the defendant with medical records from a doctor or health cqre institution, the People must subpoena them. The People, however, are not required to subpoena documents which the defense can subpoena (CPL 240.20 [2]). But the inquiry does not end there. As observed by the court in Matter of Schwartz (20 Misc 3d 860, 863 [2008]):
“The privacy of medical records traditionally has been paramount to other interests, and the need for privacy with relation to such records has been recognized by both state and federal legislatures. (See e.g. 45 CFR 164.502 et seq. [rules enacted pursuant to the Health Insurance Portability and Accountability Act of 1996 requiring professionals and institutions such as physicians and health insurance providers to obtain a patient’s consent for the release of medical information]; Public Health Law § 2997 [requiring the Department of Health to examine state laws with regard to patient privacy].)”
More than a decade ago, Congress passed the Health Insurance Portability and Accountability Act (HIPAA). In part, this legislation seeks to protect a patient’s right of privacy regarding medical information. The requirements of the federal law have been incorporated into our state discovery procedure. For instance, CPLR 3122 (a) was amended in 2002, effective September 1, 2003, to provide in relevant part:
“A medical provider served with a subpoena duces *743 tecum requesting the production of a patient’s medical records pursuant to this rule need not respond or object to the subpoena if the subpoena is not accompanied by a written authorization by the patient. Any subpoena served upon a medical provider requesting the medical records of a patient shall state in conspicuous bold-faced type that the records shall not be provided unless the subpoena is accompanied by a written authorization by the patient.”
HIPAA-compliant authorizations are now required for health care provider compliance with a subpoena duces tecum (CPLR 3122 [a]; Matter of Ettinger, 7 Misc 3d 316 [2005]). The portion of the regulatory scheme which addresses disclosure in judicial proceedings is found in 45 CFR 164.512, entitled: “Uses and disclosures for which an authorization or opportunity to agree or object is not required.” The regulations state:
“A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity’s information and the individual’s agreement may be given orally.” (45 CFR 164.512.)
The standard regarding the issuance of the subpoena to a nonparty is described by the Court in People v Bagley (279 AD2d 426, 426-427 [2001]), wherein it was held:
“The motion court erroneously denied the Police Department’s motion to quash the subpoena duces tecum since defendant failed to put forth a factual predicate to support the contention that the documents sought in the subpoena will bear relevant and exculpatory evidence (Matter of Constantine v Leto, 157 AD2d 376, affd for reasons stated below 77 NY2d 975; People v Gissendanner, 48 NY2d 543). Without the factual predicate, defendant’s subpoena merely constitutes a discovery demand directed to a nonparty, which is in contravention to the discovery provisions of CPL article 240.”
*744 Where confidential information is sought in a criminal action, the applicant bears a heavy burden to demonstrate a need for the information. He must offer in good faith some “factual predicate” which would make it reasonably likely that the information sought would establish the unreliability of either the criminal charge or of the complaining witness (see People v Gissendanner, supra). Access to confidential medical records has been denied where the defendant failed to demonstrate any theory of relevance and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records on the hope that the unearthing of some unspecified information would enable him to impeach the witness (People v Roth, 157 AD2d 494 [1990]). The instant case is not similar to Lieberman v Pomerantz (45 AD2d 689 [1974]), where the claim was that the defendant aggravated a prior injury of the victim. In the instant matter, the defendant has already been apprised, and has already been provided with medical records documenting that the complainant had a prior neck injury, that he experienced pain from that neck injury, and that he received treatment for that pain. Defendant has also received documents and reports regarding that treatment, as listed above.
Based on the above, the court concludes that the defendant has been provided with ample material from which to craft a cross-examination regarding pain arising out of the instant assault, as well as, and as distinguished from, pain previously experienced as a result of the preexisting neck condition. To conclude otherwise here, where one of the charges is assault in the third degree, an element of which is substantial pain, would open the floodgates and afford access to private individual medical records where any prior treatment involved pain, regardless of the date and origin of that pain.
Accordingly, in the exercise of the court’s discretion, and in the interest of balancing the legitimate discovery rights of the defendant with the equally legitimate privacy rights of the victim with respect to his prior medical history, the motion to compel further medical record disclosure of medical records predating the instant assault is denied.